IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCESCA VIOLA,<br><br>    Plaintiff,<br><br> v.<br><br>JOSHUA BENTON AND PRESIDENT AND<br>FELLOWS OF HARVARD COLLEGE,<br><br>    Defendant. | Civil Action No. 2:20-CV-01439-NIQA |

**REPLY BRIEF OF DEFENDANT PRESIDENT AND FELLOWS OF HARVARD
COLLEGE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT**

Dated: August 18, 2020

John P. Lavelle, Jr. (I.D. No. 54279)
Lily G. Becker (I.D. No. 313508
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: 215-963-5000
Fax: 215-963-5001
john.lavelle@morganlewis.com
lily.becker@morganlewis.com

Jonathan M. Albano (*pro hac vice forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
Tel.: 617-951-8360
Fax: 617-341-7701
jonathan.albano@morganlewis.com

*Counsel for Defendant President and Fellows of
Harvard College*

# <u>TABLE OF CONTENTS</u>

**Page**

A.    Plaintiff's Publication of Private Facts Claim Fails as a Matter of Law ............... 1

B.    Plaintiff's Intrusion Claim Fails as a Matter of Law ............................................. 2

C.    The Complaint Fails to Plausibly Allege Actual Malice ....................................... 3

D.    Plaintiff's Libel and Defamation by Implication Counts Fail to State a
      Claim..................................................................................................................... 6

E.    Counts VI and VII Fail to State Contract and Promissory Estoppel Claims ......... 8

F.    The Amended Complaint Fails to Plausibly Allege that Harvard Is
      Vicariously Liable for Benton's Tweets ................................................................ 9

G.    The Court Lacks Specific Jurisdiction Over Plaintiff's Contract and
      Promissory Estoppel Claims against Harvard........................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliota v. Graham*,
    984 F.2d 1350 (3d Cir. 1993)......................................................................................9

*Brumfield v. Sanders*,
    232 F.3d 376 (3d Cir. 2000)......................................................................................9

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006)......................................................................................1

*Burger v. Blair Medical Associates*,
    964 A.2d 374 (Pa. 2009) ......................................................................................2, 3

*Butler v. Flo-Running Vending Co.*,
    557 A.2d 730 (647) (Pa. Super. Ct. 1989) ...............................................................9

*Chicarella v. Passant*,
    484 A.2d 1109 (Pa. Super. 1985)..............................................................................2

*Earley v. Gatehouse Media Pa. Holdings, Inc.*,
    No. CIV. A. 3:12-1886, 2015 WL 1163787 (M.D. Pa. Mar. 13, 2015) ...............1, 4

*Evans v. Philadelphia Newspapers, Inc.*,
    601 A.2d 330 (Pa. Superior 1991) ...........................................................................1

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)...............................................................................................3, 5

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988).................................................................................................1, 8

*Jurin v. Google Inc.*,
    768 F. Supp. 2d 1064 (E.D. Cal. 2011)....................................................................8

*Keeshan v. Home Depot, U.S.A., Inc.*,
    No. 00-529, 2001 U.S. Dist. LEXIS 3607 (E.D. Pa. Mar. 27, 2001), *aff'd*, 35
    F. App'x 51 (3d Cir. 2002) ......................................................................................6

*Levinsky's v. Wal-Mart Stores, Inc.*,
    127 F. 3d 122 (1st Cir. 1997)....................................................................................7

*Mallory v. Simon & Schuster, Inc.*,
    728 F. App'x 132 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 154 (2018)....................5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Marcone v. Penthouse Int'l Magazine for Men*,
    754 F.2d 1072 (3d Cir. 1985)..................................................................................5

*Masson v. New Yorker Magazine, Inc.*,
    501 US 496 (1991)..................................................................................................5

*McCabe v. Vill. Voice, Inc.*,
    550 F. Supp. 525 (E.D. Pa. 1982) ........................................................................1

*McCafferty v. Newsweek Media Grp., Ltd.*,
    2019 WL 1078355 (E.D. Pa. Mar. 7, 2019), *aff'd*, 955 F.3d 352 (3d Cir. 2020) .....................4

*N.Y. Times v. Sullivan*,
    376 U.S. 254 (1964)...............................................................................................3

*Nagy v. Bell Telephone Co. of PA*,
    436 A.2d 701 (1981) ..............................................................................................3

*Overhill Farms, Inc. v. Lopez*,
    190 Cal. App. 4th 1248 (2010) .............................................................................7

*Pace v. Baker-White*,
    432 F. Supp. 3d 495, 513–14 (E.D. Pa. 2020), *app. pending* ...............................3, 4

*Snyder v. Phelps*,
    562 U.S. 443 (2011)............................................................................................1, 8

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)............................................................................................3, 5

*ToDay's Housing v. Times Shamrock Commc'ns*,
    21 A.3d 1209 (Pa. Super. 2011)............................................................................6

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003)..................................................................................9

*Tucker v. Fischbein*,
    237 F. 3d 275 (3d Cir. 2001).................................................................................5

*Veilleux v. Nat'l Broad. Co.*,
    206 F. 3d 92 (1st Cir. 2000)..................................................................................7

*Zeran v. Diamond Broad., Inc.*,
    203 F.3d 714 (10th Cir. 2000) ..............................................................................5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Zippo Mfg. Co. v. Zippo Dot Com*,
  952 F. Supp. 1119 (W.D. Pa. 1997)........................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)........................................................................10

Fed. R. Civ. P. 12(b)(6)........................................................................10

*Restatement (Second) of Torts*, § 652D (1977)........................................................1, 4

Defendant President and Fellows of Harvard College ("Harvard") respectfully submits this reply brief in support of their motion to dismiss plaintiff's amended complaint.[1]

A.    **Plaintiff's Publication of Private Facts Claim Fails as a Matter of Law.**

The scant two pages Prof. Viola devotes to her publication of private facts claim (Opp. Br., Dkt. 15, at 16-17), cite no authority for the proposition that comments by a public university journalism professor about journalism and public affairs "are not of legitimate concern to the public," an essential element of the claim. *See Restatement (Second) of Torts*, § 652D (1977); *see also* Harvard's opening brief ("Harvard Br."), Dkt. 12, at 22-27.[2]   And even if state law permitted such a claim, it would be barred by the First Amendment. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) ("At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern.").[3] Because the subject matter of Benton's tweets was a matter of legitimate public interest, plaintiff's publication of private facts claims (Count I), and her companion claims for infliction of emotional distress and tortious interference arising out of the publication of true facts (Counts VIII and IX) fail as a matter of law. *See* Harvard Br., Dkt. 12, at 39-42*; see generally Evans v. Philadelphia Newspapers, Inc.*, 601 A.2d 330, 333 (Pa. Superior 1991) (courts "look to the gravamen of the action, not to the label applied to it by plaintiffs").

---

[1] Contrary to plaintiff's argument, *see* Opp. Br., Dkt. 15, at 10-11, the exhibits attached to Harvard's motion are properly considered on a motion to dismiss. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Earley v. Gatehouse Media Pa. Holdings, Inc.*, No. CIV. A. 3:12-1886, 2015 WL 1163787, at *2 (M.D. Pa. Mar. 13, 2015).

[2] *McCabe v. Vill. Voice, Inc.*, 550 F. Supp. 525, 530 (E.D. Pa. 1982), cited by plaintiff, simply held that a photograph of a nude woman in a bathtub is not a matter of public concern, a situation hardly analogous to this case.

[3] Justice Breyer's concurrence in *Snyder v. Phelps*, cited by Prof. Viola at page 17 of her brief, only underscores that publishing information of legitimate public concern is protected even when the means of obtaining the information is not. *See* 562 U.S. 443, 461 (2011) (Breyer, J., concurring) ("The constitutionally protected nature of the end would not shield A's use of the unlawful, unprotected means.").

**B.**      <u>Plaintiff's Intrusion Claim Fails as a Matter of Law.</u>

Prof. Viola also cites no authority holding that a website administrator who looks at a user's email address has committed the tort of intrusion upon seclusion.   The amended complaint concedes that, "[i]n his capacity as Director of Nieman Lab, Benton had administrative access to view Viola's email address associated with [her] comment posted to the [Nieman Lab] Article." Am. Complaint, Dkt. 10, ¶ 38.   *See also id.* at ¶ 21 (the "email address of users who comment on websites using Disqus is accessible by the website administrators").   As the Pennsylvania Supreme Court's decision in *Burger v. Blair Medical Associates,* 964 A.2d 374 (Pa. 2009) establishes, tacking on the allegation that Benton "abused" his administrative access by looking at plaintiff's email does not satisfy the elements of the tort of intrusion.

The plaintiff in *Burger* authorized her health care provider to release medical records for the limited purpose of proving expenses associated with her worker's compensation claim.  *Id.* at 375.   "[I]n releasing the record of treatment for [plaintiff's] injury, however, [her health care providers] disclosed her unrelated use of marijuana and pain medication without a prescription." *Id.*   The health care provider thus "abused" its access to confidential information "not related to the stated purpose of the medical authorization," and then provided that information to the plaintiff's employer, who fired her.  *Id.* at 376.  *Burger* held that because the health care provider "legitimately obtained" the unrelated drug use records, "the theory of 'intrusion upon seclusion,' which requires an intentional and unwarranted acquisition by the defendant, [was] inapplicable." *Burger*, 964 A.2d at 379 (citations omitted).   So too here, Benton did not intrude on Prof. Viola's seclusion by looking at a "legitimately obtained" email address. *See also Chicarella v. Passant*, 484 A.2d 1109, 1114 (Pa. Super. 1985) (private investigators' conduct in obtaining plaintiff's hospital records for use in personal injury litigation was not sufficiently offensive to state a claim for intrusion); *Nagy v. Bell Telephone Co. of PA*, 436 A.2d 701, 704 (1981) (disclosing phone

number of domestic abuse victim despite her demand for privacy was not highly offensive, objectionable conduct required to state an intrusion claim).

At bottom, the intrusion claim is simply an attempt to do an end run around the state law and constitutional requirements for a publication of private facts claim. Prof. Viola admits that her alleged damages were not caused by Benton looking at her email address but, rather, by Benton publishing her identity as "truthseeker" on his personal Twitter account. *See* Plaintiff's Memorandum at 12 (Benton "harass[ed] her repeatedly through a series of Tweets doxing her on Twitter"); *id.* at 15 ("Benton repeatedly targeted and harassed Viola in a string of tweets published to thousands of Twitter followers"). *See also Amended Complaint*, ¶¶ 44, 62. These are claims for *publication* damages, not *intrusion* damages. *See Burger*, 964 A.2d at 379-80. Because the amended complaint alleges that Prof. Viola's alleged damages were caused by Benton publishing her identity on Twitter, not by looking at her email address, Count II fails to state a claim. *See also* Harvard Br., Dkt. 12, at 21-24 and cases cited therein.

## C.   The Complaint Fails to Plausibly Allege Actual Malice.

A statement made with actual malice is one made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times v. Sullivan*, 376 U.S. 254, 280 (1964). The "reckless disregard" component of actual malice means that the defendant "in fact entertained serious doubts as to the truth of his publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or acted with a "high degree of awareness of . . . probable falsity." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (citation and quotation marks omitted).

"In the wake of *Iqbal* and *Twombly*, 'adequately pleading actual malice is an onerous task[.]'" *Pace v. Baker-White*, 432 F. Supp. 3d 495, 513–14 (E.D. Pa. 2020), *app. pending*, (internal quotation marks and citations omitted). "And it is one that regularly results in early dismissal of an action." *Id* at 514. (citing *McCafferty v. Newsweek Media Grp., Ltd.*, 2019 WL

1078355, at *6 (E.D. Pa. Mar. 7, 2019), *aff'd*, 955 F.3d 352 (3d Cir. 2020); *Earley*, 2015 WL 1163787, at *3 (collecting cases)).

"[A]dequately pleading actual malice" is an even more "onerous task" here given the allegations of the amended complaint. *Pace*, 432 F. Supp. 3d at 513–14 (internal quotation marks and citations omitted). Prof. Viola's publication of private facts claim, for example, alleges that Benton published *true* facts about her, a fact fatal to a libel claim. *See Restatement of Torts*, § 652D, Special Note ("This Section provides for tort liability involving a judgment for damages for publicity given to *true* statements of fact.") (emphasis added). *See also* Am. Compl., Dkt. 10, ¶¶ 68-69. Her breach of contract and promissory estoppel claims similarly allege that Benton published comments that Prof. Viola in fact posted as "truthseeker." *Id.* ¶¶ 114-15, 123-25.

Although Prof. Viola disputes authorship of one of the five "truthseeker" comments (the one she refers to as the "Muslim Comment"), she does not (and cannot) deny that the "Muslim Comment" was among those posted on her "truthseeker" account—she simply denies (without explanation) that she was the one who posted it. *See id.* ¶¶ 52-54. *See also id.* ¶ 53 ("Viola specifically denies publishing this comment"). Adequately pleading actual malice requires Prof. Viola to plausibly explain how Benton, having verified that the "truthseeker" account was Prof. Viola's, and having accurately identified four "truthseeker" comments that Prof. Viola admits she authored, either (a) knew that the "Muslim Comment"—posted on the same "truthseeker" account—actually was written by some other person (as yet unidentified by Prof. Viola); or (b) entertained serious, subjective doubts about whether Prof. Viola wrote that comment. The amended complaint fails to offer any such explanation, let alone a plausible one.

Prof. Viola claims, for example, that Benton was motivated by "ill will toward 'right leaning political views'" and a desire to see her "harassed publicly by hundreds of people, fired

from her job and have her censured." Opp. Br., Dkt. 15, at 23. These allegations (themselves implausible) fail as a matter of law to show actual malice. As the Supreme Court has said, "[a]ctual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Magazine, Inc.*, 501 US 496, 510 (1991) (citation omitted).

Prof. Viola also claims that Benton's failure to contact her before tweeting the "truthseeker" comments violated his "ethical duties" and "journalistic standards." Opp. Br., Dkt. 15, at 23. But "[t]he Supreme Court has made clear that even an extreme departure from professional standards, without more, will not support a finding of actual malice." *Tucker v. Fischbein*, 237 F. 3d 275, 286 (3d Cir. 2001); *see also Harte-Hanks*, 491 U.S. at 665 ("[P]laintiff must prove more than an extreme departure from professional standards[.]"). "Likewise, a failure to investigate, standing alone, does not constitute actual malice." *Tucker*, 237 F. 3d at 286.[4]

In *St. Amant*, for example, the defendant "had no personal knowledge of [the plaintiff's] activities," relied "solely on [a source's] affidavit although the record was silent as to [the source's] reputation for veracity," failed to verify the information with those … who might have known the facts," "gave no consideration as to whether or not the statements defamed [the plaintiff] and went ahead heedless of the consequences [.]" 390 U.S. at 730. Despite those facts, the Supreme Court held that "[b]y no proper test of reckless disregard was St. Amant's broadcast a reckless publication about a public officer." *Id*. at 732. The actual malice allegations of the amended complaint are far more sparse than those found deficient in *St. Amant*. Because actual malice is an essential element of a false light claim, Count III should be dismissed. *See also* Harvard Br. at 29-31.

---

[4] *See also St. Amant*, 390 U.S. at 731; *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1089 (3d Cir. 1985); *Mallory v. Simon & Schuster, Inc.*, 728 F. App'x 132, 136 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 154 (2018). *See generally Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 719 (10th Cir. 2000) (radio show host's reliance on anonymous Internet posting did not constitute actual malice)).

**D.** **Plaintiff's Libel and Defamation by Implication Counts Fail to State a Claim.**

Count IV alleges that Benton libeled Prof. Viola by falsely attributing the "Muslim Comment" to her.  She disputes authoring the comment, but does not dispute that it was posted on her "truthseeker" account.  Her defamation claim thus presses the difference between (a) Benton saying that the "Muslim Comment" was posted by Prof. Viola with the other comments on her "truthseeker" account; and (b) Benton instead saying that the Muslim Comment and the other comments all were posted on Prof. Viola's "truthseeker" account, and adding her claim that an unidentified third party put the Muslim Comment there.  That distinction is not a basis for a libel claim, even if Prof. Viola did not also admit complaining about a newspaper not giving readers a "chance to express any anti-Muslim or anti-immigrant sentiments."  *See* Am. Complaint, Dkt. 10-11, Ex. K at 2-3 (Dkt. 10-11); Mot. to Dismiss, Dkt. 12-3, Ex. A at A-6.  *See generally Keeshan v. Home Depot, U.S.A., Inc.*, No. 00-529, 2001 U.S. Dist. LEXIS 3607, *53-54 (E.D. Pa. Mar. 27, 2001), *aff'd*, 35 F. App'x 51 (3d Cir. 2002) ("[T]he test is whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." (internal quotation marks and citations omitted)); *ToDay's Housing v. Times Shamrock Commc'ns*, 21 A.3d 1209, 1215 (Pa. Super. 2011) ("The law does not require perfect truth, so long as any inaccuracies do not render the substance and 'gist' of the statements untrue.") (citation omitted).  *See also* Harvard Br., Dkt. 12, at 34-37.[5]

The libel and defamation by implication claims also fail adequately to plead that Benton violated the standard of care, be it actual malice or negligence.  Because, as a public university teacher, Prof. Viola is a public official for libel purposes, *see id.* at 27-29, and because, as shown

---

[5] Count V, for defamation by implication, fails for the same reason to the extent based on the Muslim Comment.  To the extent Count V is intended to challenge Benton's tweets about the other four "truthseeker" comments, the claim is barred for the reasons stated in Harvard's opening brief.  *See* Harvard Br., Dkt. 12, at 32-37.

in § C, *supra*, the amended complaint fails to adequately plead actual malice, the counts for libel and defamation by implication fail to state a claim.  And even assuming (for purposes of this motion only) that Prof. Viola is a private figure, the amended complaint does not plausibly plead negligence, *i.e.*, that Benton had any objective reason to doubt the reliability of the information he obtained from the Disqus platform.  That information accurately identified Prof. Viola as "truthseeker" and gave him no objective reason to doubt that the comments posted were hers.  *See* Am. Compl., Dkt. 10, ¶ 41 ("Benton was also able to identify previous anonymous comments posted using the same Truthseeker Account"); *id.* ¶ 69 (Benton "discover[ed] the private fact of her true identity in association with the Truthseeker Account").  *See generally Veilleux v. Nat'l Broad. Co.*, 206 F. 3d 92, 114 (1st Cir. 2000) ("Reporters have leeway to draw reasonable conclusions from the information before them without incurring defamation liability.") (citation omitted); *Levinsky's v. Wal-Mart Stores, Inc.*, 127 F. 3d 122, 134 (1st Cir. 1997) ("Disregarding company policy is risky — but it may or may not be negligent.").  *See also* Harvard Br., Dkt. 12, at 37-39.

Finally, under Pennsylvania law, as in other jurisdictions, accusations of racism—without accompanying accusations of misconduct—are not actionable.  People in this country, including their elected leaders, hold widely divergent views on immigration.  As in any such heated political debate, the law does not dictate that either side of the aisle is deserving of the public opprobrium required to state a claim for defamation.  *See* Prosser & Keeton, *Law of Torts* §§ 773, 774 (West 5th ed. 1984) (not defamatory to call a Democrat is a Republican); *see also Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262-63   (2010) (distinguishing between nonactionable statements charging a person with being "racist, unfair, or unjust" and a claim of "racially

motivated employment termination"). *See also* Harvard Br., Dkt. 12, at 32.[6]

      **E.**      <u>**Counts VI and VII Fail to State Contract and Promissory Estoppel Claims.**</u>

      Confronted with the plain meaning of the provision in the Disqus Basic Rules stating that "Real name isn't currently covered" as personally identifiable data, plaintiff seems to concede that her real name was not entitled to any protection, but instead sees in the penumbra of the Rules protection from disclosure of the identity of her employer. Opp. Br., Dkt. 15, at 25-26. The Disqus Rules say no such thing and, in all events, certainly are not a contract between plaintiff and Harvard, or any kind of promise to plaintiff by Harvard. *See* Harvard Br., Dkt. 12, at 41. Her additional argument that Benton's tweets constitute harassment and intimidation fail for the same reasons as her publication of private facts claim. *See generally Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011).

      The plain meaning of Harvard's Privacy Statement also bars plaintiff's contract and promissory estoppel claims. First, the Privacy Statement is simply that: a statement of privacy practices. Nothing in the Privacy Statement purports to bind the University and the browsers of its website in a contractual relationship. *See generally Jurin v. Google Inc.*, 768 F. Supp. 2d 1064, 1073 (E.D. Cal. 2011) ("A broadly stated promise to abide by its own policy does not hold Defendant to a contract."). Second, by its terms the Privacy Statement provides that it applies only to the "session and the pages you visit on www.harvard.edu." Third, the Privacy Statement makes plain that it applies only to information gathered and collected by Harvard and its units and affiliates. But, as plaintiff alleges, Benton obtained her email address from information collected by Disqus, not Harvard. *See* Am. Complaint, Dkt. 10, ¶ 21 ("The email addresses of users who

---

[6] Plaintiff's companion claims for tortious interference with contractual relations and infliction of emotional distress arising out of the publication of allegedly defamatory facts are barred for same reasons as her defamation claims. *See Hustler*, 485 U.S. at 50; Harvard Br., Dkt. 12, at 39-42.

comment on websites using Disqus is accessible by the website administrators also known as a moderator ("Moderator"), but it is not accessible by third parties or visible to the general public."); *see also id.* ¶¶ 27, 38.   Prof. Viola's contract and promissory estoppel claims pile one unsupportable inference upon another, ultimately asserting that simply by linking to another site's Privacy Statement, the Nieman Lab bound itself by contract or quasi-contract to restrictions that do not exist in, nor are even contemplated by, that document.  Accordingly, Prof. Viola's contract and promissory estoppel claims under the Harvard Privacy Statement fail as a matter of law.

**F.     The Amended Complaint Fails to Plausibly Allege that Harvard Is Vicariously Liable for Benton's Tweets.**

Prof. Viola's scope of employment argument boils down to her legally and factually flawed argument that Harvard somehow "ratified" Benton's conduct.  She cites no case law in support of her "ratification" theory, which ultimately rests on the non sequitur that Benton's apology did *not* state that he was *not* speaking for his employer.  Opp. Br., Dkt. 15, at 5.  The other cases cited by Prof. Viola are inapposite.[7]  *See also* Harvard Br., Dkt. 12, at 15-19.

**G.     The Court Lacks Specific Jurisdiction Over Plaintiff's Contract and Promissory Estoppel Claims against Harvard.**

Prof. Viola's reliance on *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997) for her specific jurisdiction argument is misplaced.  *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) and cases cited at pages 12-14 of Harvard's opening brief (Dkt. 12).  Should this Court find there is no specific jurisdiction over the contract claims against Harvard, Harvard has no objection to plaintiff's suggestion that the case be transferred to the

---

[7] *Butler v. Flo-Running Vending Co.*, 557 A.2d 730, (647) (Pa. Super. Ct. 1989), involved misconduct by two employees who were assisting in their employer's investigation of a burglary.  In *Brumfield v. Sanders*, 232 F.3d 376, 378, 381 (3d Cir. 2000), the allegedly defamatory statements were made by Bureau of Prison employees in the course of an Internal Affairs investigation.  In *Aliota v. Graham*, 984 F.2d 1350, 1359 (3d Cir. 1993), an employee whose job duties included communicating to manufacturers allegedly defamed the plaintiff while speaking to one such manufacturer.

District of Massachusetts.  Opp. Br., Dkt. 15, at 9.

## CONCLUSION

Plaintiff's amended complaint should be dismissed under Rule 12(b)(6) for failure to state

a claim or under Rule 12(b)(2) for lack of jurisdiction over Harvard.

Dated: August 18, 2020                    Respectfully submitted,


By: /s/John P. Lavelle, Jr.
    John P. Lavelle, Jr. (I.D. No. 54279)
    Lily G. Becker (I.D. No. 313508)
    MORGAN, LEWIS & BOCKIUS LLP
    1701 Market Street
    Philadelphia, PA 19103
    Tel:  215-963-5000
    Fax:  215-963-5001
    john.lavelle@morganlewis.com
    lily.becker@morganlewis.com

    Jonathan M. Albano (*pro hac vice forthcoming*)
    MORGAN, LEWIS & BOCKIUS LLP
    One Federal Street
    Boston, MA 02110
    Tel.:  617-951-8360
    Fax:  617-341-7701
    jonathan.albano@morganlewis.com

    *Counsel for Defendant President and Fellows of Harvard College*