# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANCESCA VIOLA** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 20-1439** |
| **v.** | : | |
| | : | |
| **JOSHUA BENTON,** *et al.* | : | |
| *Defendants* | : | |

# ORDER

**AND NOW**, this 9th day of February 2021, upon consideration of the *motion to dismiss for lack of personal jurisdiction*, [ECF 12], filed by Defendant President and Fellows of Harvard College ("Harvard"), Plaintiff's response in opposition thereto, [ECF 15], Harvard's reply, [ECF 22], Plaintiff's sur-reply, [ECF 25], and the allegations contained in the amended complaint, [ECF 10], it is hereby **ORDERED** that the motion is **GRANTED**. Accordingly, the Clerk of Court is directed to **TRANSFER** this matter to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1631.[1]

---

[1] Plaintiff Francesca Viola, a former journalism professor at Temple University, filed this action against Defendants Joshua Benton ("Benton") and Harvard, asserting, *inter alia*, claims of invasion of privacy, defamation, and breach of contract. Plaintiff's claims are premised on her contentions that Benton wrongfully exposed her identity as the author of various anonymous postings on a website operated by Defendants. In its underlying motion, Harvard moves to dismiss this matter on the basis that this Court lacks personal jurisdiction over it because Harvard is neither incorporated nor "at home" in Pennsylvania, as required by the seminal Supreme Court decision, *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and because Plaintiff's claims do not arise out of any contacts Harvard had with Pennsylvania.

Plaintiff concedes that this Court lacks general jurisdiction over Harvard under *Daimler*, but argues that this Court possesses specific jurisdiction over Harvard because her claims arise out of contacts Harvard had with Pennsylvania. Specifically, Plaintiff argues that this Court possesses specific jurisdiction over Harvard with respect to Plaintiff's tort claims because those claims arise out of Benton's contacts with Pennsylvania while he was acting within the course and scope of his employment with Harvard. With respect to her contract claims, which purportedly arise out of a contract entered into by way of Plaintiff's anonymous posting of comments on a website operated by Harvard, Plaintiff argues that this Court has personal jurisdiction under the "sliding scale" test applied by courts in this Circuit to a defendant's website presence. *See Zippo Manufacturing Company v. Zippo Dot Com, Incorporated*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997).

It is well-settled that personal jurisdiction must be assessed on a claim-by-claim basis. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001)). Plaintiff bears the burden of showing that personal jurisdiction exists. *Marten*, 499 F.3d at 295-96. Because the parties agree that this matter can and should be transferred to the District Court of Massachusetts pursuant to 28 U.S.C. § 1631 if this Court concludes that it lacks personal jurisdiction over Plaintiff's contract claims, [*see* ECF 15 at p. 9 and ECF 22 at pp. 9-10], this Court will first address personal jurisdiction with respect to Plaintiff's contract claims.

When a defendant's alleged contact with the forum state is established through the internet (as Plaintiff argues here), a court must determine "whether a defendant established minimum contacts through cyberspace." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211-12 (3d Cir. 2014). In making this determination, courts consider the sliding scale approach set forth in *Zippo Manufacturing Company v. Zippo Dot Com, Incorporated*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997). *See Toys "R" Us*, 318 F.3d at 452 (3d Cir. 2003) (referring to *Zippo* as "a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site"). Under the *Zippo* sliding scale approach, the likelihood of establishing personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo,* 952 F. Supp. at 1124. On one end of the scale (where personal jurisdiction can be established) are "situations where a defendant uses an interactive commercial website to actively transact business with residents of the forum state." *Ackourey*, 573 F. App'x at 211. At the other end of the scale (where personal jurisdiction is lacking) are "situations where a passive website merely provides information that is accessible to users in the forum state). *Id*. When a case falls between these two extremes, courts examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id*. at 211-12 (quoting *Zippo*, 952 F. Supp. at 1124 and citing *Toys "R" Us*, 318 F.3d at 452). The United States Court of Appeals for the Third Circuit ("Third Circuit") has emphasized, however, that "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us*, 318 F.3d at 454. Instead, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id*.

A defendant has "purposefully availed" itself if its website repeatedly attracts business from a forum or knowingly conducts business with forum state residents via the site. *Id.* at 452; *Doe v. Hesketh*, 15 F. Supp. 3d 586, 597 (E.D. Pa. 2014) (stating that "the *Zippo* sliding scale requires some evidence of commercial interactivity with the forum state as where the *Zippo* defendants solicited subscribers and entered into contracts to furnish services to Pennsylvania customers"); *see also UHS of Delaware, Inc. v. United Health Services, Inc.*, 2013 WL 12086321, at *9 (M.D. Pa. Mar. 26, 2013) ("[T]he hallmark of a commercial site is not . . . the users' submission or receipt of information, but the clear presence of deliberate and repeated online business transactions through which the host provides a good or service in return for monetary compensation.").

Here, the "level of interactivity and commercial nature" of Harvard's website is minimal. *Zippo*, 952 F. Supp. at 1124. As described in the amended complaint, the website at issue essentially provided a forum for users to publish various articles and engage in public discussion of those articles. Relying upon a screenshot exhibit attached to her response, Plaintiff contends that the website allowed users to purchase subscriptions to Harvard's print content using the website or a printable form available on the website. (*See* Pltf. Resp., ECF 15, at p. 8). Notably, that screenshot is actually from a different website than that identified in the amended complaint. Regardless, Plaintiff has proffered no evidence as to any such subscription

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

purchases made via the website, or the volume or frequency of any such purchases by Pennsylvania residents. Indeed, Plaintiff does not even suggest that she purchased a subscription or anything from Harvard's website. Further, Plaintiff's claims do not arise out of any such purchase. In the absence of any substantiated commercial nature to the website at issue or any evidence of purposeful solicitation or targeting of Pennsylvania residents by the website, this Court finds that Harvard's website is "essentially passive," *Ackourey*, 573 F. App'x at 212, as it "does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction." *Zippo*, 952 F. Supp. at 1124. Accordingly, Plaintiff has not met her burden of establishing personal jurisdiction over Harvard with respect to her contract claims.

As noted, in the absence of personal jurisdiction over Plaintiff's contract claims, the parties agree that this matter can and should be transferred to the District Court of Massachusetts, pursuant to 28 U.S.C. § 1631. Section 1631 provides that where a court finds personal jurisdiction lacking, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed . . . ." *Id*. Because transfer is preferred over dismissal, there is a rebuttable presumption in favor of transfer. *Pacific Emp'rs Ins. Co. v. AXA Belgium S.A.*, 785 F. Supp. 2d 457, 475 (E.D. Pa. 2011).

Although the parties agree that this matter be transferred under these circumstances, this Court must first determine whether the action could have been brought in the District of Massachusetts in order to decide whether to transfer this action. Here, Harvard and Benton are citizens of Massachusetts and, notably, neither contends that this action could not have been brought in Massachusetts. Further, the bulk of the alleged conduct underlying Plaintiff's claims appears to have occurred in Massachusetts. Thus, this action could have been brought in the District of Massachusetts.

Next, this Court must determine whether transferring the action would serve the interests of justice. *See D'Jamoos ex rel. Estate of Weinegroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009); 28 U.S.C. § 1631. In making such a determination, courts look to three factors: (1) whether transfer would unfairly benefit Plaintiff; (2) whether it would impose an unwarranted hardship on Defendants; and (3) whether transfer would unduly burden the judicial system. *Pacific Emp'rs*, 785 F. Supp. 2d at 475-76. Here, all three factors weigh in favor of transfer. Plaintiff will not unfairly benefit from the transfer, since she is a resident of Pennsylvania. Transfer will not impose an unwarranted hardship on Defendants since they reside in Massachusetts. In addition, transferring this matter will not unduly burden the judicial system, as the District of Massachusetts is very capable of adjudicating the substantive and procedural issues in this case. Since the factors favor transfer, this Court will transfer this matter to the District of Massachusetts.

3